Christy C. Brown (# 0017968)
CHISM BROWN LAW
3411 North 32nd Street
Phoenix, Arizona 85018
(602) 955-2444
Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| PHILLIP AND JOYCE OATES, Arizona residents<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA DIEZ AND JAMES DIEZ dba DIEZ ASSOCIATES, and LA PETITE CHATEAU APARTMENTS, LLC, an Arizona limited liability company<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

COMES NOW the Plaintiffs, Phillip and Joyce Oates and for their Complaint against the Defendants alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Phillip and Joyce Oates (the "Oates" or "Plaintiffs") are husband and wife and are residents of Maricopa County, Arizona.

2. Defendants Pamela Diez and James Diez ("Diez") are husband and wife and are residents of Maricopa County. All actions of Pamela and James Diez were performed on behalf of the marital community.

3. Upon information and belief Defendant Diez Associates ("Diez") is a trade name for Pamela Diez and James Diez.

4. Upon information and belief, Diez Associates owns several apartment complexes, including La Petite Chateau, Chateau Gardens, and Northern Chateau Apartments.

5. Defendant, La Petite Chateau Apartments, LLC ("LPCA") is an Arizona limited liability company doing business in Maricopa County Arizona.

6. Diez and LPCA are collectively referred to as "Defendants".

7. The Oates are and were at all relevant times, employees of Diez.

8. The events giving rise to this lawsuit occurred in Maricopa County, Arizona.

9. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1331 because the case involves violation of a federal statute.

10. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to the lawsuit occurred in Maricopa County, Arizona.

**GENERAL ALLEGATIONS**

11. The Oates re-allege and incorporate paragraphs 1 through 10 as though fully set forth herein.

12. The Oates' employment with Diez began on or about April 8, 2009, when they were hired as assistant managers of the LPCA apartment complex (the "Complex").

13. Defendants have no policy or procedure in place for the payment of overtime compensation to its employees.

14. Diez never informed the Oates of any mechanism through which they could receive overtime compensation for any overtime hours worked.

15. When the Oates were hired, LPCA provided them with an apartment.

16. A similar apartment in the complex rents for $590 per month. However, the apartment should not be considered part of their wages because it was provided to them "for purposes of enabling the employees to perform their services better."

17. The Oates' combined salary has consisted, and currently consists of wages in the amount of one thousand two hundred dollars ($1,200) per month.

18. As assistant managers of the Complex, both Mr. and Mrs. Oates work each week from 9:00 a.m. until 5:00 p.m., Tuesday through Saturday.

19. LPCA required the Oates to be on-call Tuesday through Saturday from 5:00 p.m. until 9:00 a.m.

20. While on-call, Mr. and Mrs. Oates were required to remain at the Complex in order to handle tenant emergencies and other issues that arose after normal business hours.

21. In fact, a sign in the LCPA office, directed tenants to contact Mr. or Mrs. Oates for after hour emergencies.

22. The Oates were regularly contacted during the on-call hours for work. For example, on or about May 9, 2009, LPCA security notified the Oates at approximately 2:30 am that two LPCA apartments were flooding. The Oates worked all-night and part of the next day cleaning up the water and dealing with the leaks.

23. Approximately one month later, another apartment also had a water leak and again the Oates were notified of the problem and spent all night dealing with the problem and cleaning the water out of the apartment.

24. Additionally, Defendants informed the Oates shortly after they began employment with LPCA, that the Oates were given an apartment in the back so they could tend to any tenant and other LPCA problems as they occurred.

25. Defendants also informed the Oates that they were required to remain on the LPCA grounds from 5:00 p.m. Tuesday until Sunday morning.

26. The Oates were advised that they could not have guests to their apartment during their on-call hours.

27. Although the Oates were required to remain on the premises while on-call, Defendants never compensated Mr. and Mrs. Oates for any of their on-call hours worked.

28. For example, on one occasion, the Oates' drove their friend to a nearby hospital to visit their friend's dying mother. Mr. Oates informed the LPCA security guard of their plans, and Mr. Oates provided the security guard with his cell phone number so the Oates could be contacted in the event they were needed at LPCA. In addition, Mr. Oates informed the security guard that they would only be gone for approximately one hour. In response, Mr. Oates was advised that he was lucky the security guard did not call the owners because Mr. Oates would have been fired. The supervisor warned Mr. Oates that that Mr. Oates should not let a similar situation transpire in the future or he would be fired.

29. On a separate occasion, the Oates attempted to attend a friend's wake during their on-call time. Despite providing advance notice of the wake to LPCA, the Oates were told by LPCA that they "better stay" at LPCA and LPCA even went as far as to

leave a note for the Oates on the office desk stating that the Oates must stay and should not leave for the wake.

30.    As of the workweek beginning on or about April 8, 2009, through the date of this lawsuit, Mr. and Mrs. Oates each individually worked forty (40) regular hours per workweek.

31.    As of the workweek beginning on or about April 8, 2009, through the date of this lawsuit, Mr. and Mrs. Oates each individually worked forty (40) on-call hours per workweek.

32.    On the first and fifteenth day of each month, Mr. Oates received a check from Diez in the amount of six hundred dollars ($600.00).

33.    Although Diez Associates employs both Mr. and Mrs. Oates and Mrs. Oates works the same number of hours as Mr. Oates, Diez Associates has never issued any payment to Mrs. Oates for the hours that she has worked.

34.    When Mr. Oates asked the supervisor why Mrs. Oates was not receiving a paycheck, the supervisor advised Mr. Oates that he would be fired if he asked any more questions about Mrs. Oates' unpaid wages.

35.    Despite the supervisor's threat, Mr. Oates brought his concerns to Dave Freemont, the General Manager of LPCA and Diez Associates.

36.    Mr. Freemont's response to Mr. Oates was that they both did not need to receive a paycheck, and that the IRS would get double tax payments if each of the Oates received a paycheck.

37.    To date, Mrs. Oates has not received payment of any wages for the hours she has worked since she became employed by Diez Associates.

38. Diez Associates has not provided Mrs. Oates with a yearly W-2 wage statement, as required by law.

39. Although Mr. Oates has been paid twelve hundred dollars ($1200) per month since he began working at Diez Associates he has worked in excess of forty (40) hours per workweek without receipt of any compensation for these hours.

40. Since Mrs. Oates began working at Diez Associates she has worked in excess of forty (40) hours per workweek without receipt of any compensation for any of the hours she has worked as a Diez Associate employee.

41. Upon information and belief, Diez pays the wife of the general manager even though she is not an employee, rather than paying the general manager.

42. The general manager of LCPA is also the general manager for the other Diez properties.

43. Upon information and belief, when Mr. and Mrs. Diez are traveling, they ask the manager of the apartment to provide them with the rent in cash, rather than depositing it in the bank.

44. The actions of Diez employees were performed during the course and scope of their employment with Diez and were done at the direction of Diez.

## COUNT I

## Violation of 28 U.S.C. § 201, et seq.

45. Plaintiff re-alleges and incorporates paragraphs 1 through 44 as though fully set forth herein.

46. Defendants have gross revenues over $500,000 a year.

47. The Oates were not compensated minimum wage.

48. Mr. and Mrs. Oates worked more than forty (40) hours per work week.

49. Mr. and Mrs. Oates were entitled to be compensated at a rate of one and one-half times the regular rate that they were employed for the hours they worked overtime.

50. Defendants failed to compensate Mr. and Mrs. Oates as required under 28 U.S.C. § 207.

51. Mr. and Mrs. Oates are entitled to liquidated damages in an additional equal amount, as stipulated in 29 U.S.C. § 216.

## COUNT II

### Failure to Pay Wages Due under A.R.S. 23-350, et seq.

52. Plaintiffs re-allege and incorporate paragraphs 1 through 51 as though fully set forth herein.

53. Pursuant to A.R.S. § 23-363(A) employers must pay their employees no less than the minimum wage, which is currently seven dollars and twenty-five cents ($ 7.25) an hour.

54. Mr. and Mrs. Oates each individually work one hundred sixty (160) regular hours each month.

55. Mr. and Mrs. Oates also each individually work one hundred sixty (160) on-call hours each month.

56. Although Diez Associates issues to Mr. Oates payments in the amount of twelve hundred dollars ($1200) per month, these payments are meant to compensate both Mr. and Mrs. Oates.

57. Defendants compensate both Mr. and Mrs. Oates a level far below Arizona's minimum wage requirement.

58. Defendants have never issued Mrs. Oates any monetary compensation.

59. Defendants willful failure and refusal to pay Mr. and Mrs. Oates minimum wages to which they are entitled are violations of A.R.S. § 23-363(A).

60. Additionally, A.R.S. § 23-351(C) requires that employers in Arizona shall, on each of the regular paydays, pay to each employee, in lawful money of the United States or in negotiable bank checks, all wages due the employee up to such date.

61. Because Defendants failed and refused to pay any of the wages due Mrs. Oates, Defendants have been, and are currently in violation A.R.S. § 23-351(C).

62. Pursuant to A.R.S. § 23-355(C) the Oates are entitled to bring this civil action against Defendants and recover an amount that is treble the amount of the unpaid wages, plus interest.

63. Additionally, Defendants acted fraudulently by knowingly refusing and failing to pay Mr. and Mrs. Oates wages to which they are entitled.

## COUNT II

### (Unjust Enrichment)

64. Plaintiffs re-allege and incorporate paragraphs 1 through 63 as though fully set forth herein.

65. By reason of the acts, omissions and conduct of Defendants as hereinabove alleged, Defendants are retaining benefits without paying for them.

66. Specifically, but without limiting the foregoing, Defendants are retaining the benefit of having a Mrs. Oates work as a full-time Assistant Manager without paying any wages for said benefit.

67. Defendants are also retaining the benefit of Mr. Oates work without compensating him in the correct amount.

68. By employing Mrs. Oates as a full-time employee for more than one year without providing Mrs. Oates with any monetary compensation and by not paying the correct wages to Mr. Oates, Defendants have been unjustly enriched.

69. The Oates have been damaged by Defendants unjust enrichment.

WHEREFORE Plaintiffs pray for judgment against Defendant for the following:

    A. For compensatory damages in an amount to be proven at trial.

    B. For damages in the amount that is treble the wages due.

    C. For punitive damages for Defendant's willful and malicious conduct.

    D. For attorneys' fees and costs incurred herein.

    E. For any other relief this court deems just and proper.

Respectfully submitted this 9th day of August, 2010,

CHISM BROWN LAW

s/Christy C. Brown
Christy C. Brown
3411 North 32nd Street
Phoenix, AZ 85018
Attorneys for Plaintiffs

ORIGINAL of the foregoing
Electronically filed
this  9th day of
August, 2010:

By  s/Skylee Chikuni